UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NOMAR CAMILO, et. al.,
    Plaintiffs

v.

ALBERT NIEVES, et. al.,
    Defendants

Civil No. 10-2150 (DRD)

**OPINION AND ORDER
ADOPTING REPORT AND RECOMMENDATION**

Pending before the Court are Defendants' *Nominal Defendants' Motion to Dismiss Plaintiffs' Verified Shareholder Derivative Action Complaint or, in the Alternative, for Judgment on the Pleadings* (Docket No. 87), and *Motion in Request of Judgment on the Pleadings* (Docket No. 88). The Court referred all pretrial motions to Magistrate Judge Bruce J. McGiverin for a Report and Recommendation (Docket No. 85), which was issued on November 1, 2013 (Docket No. 101).

In the Report and Recommendation, Magistrate Judge McGiverin recommends that Defendants' motions be granted. The Magistrate Judge reasoned that Plaintiffs' claim must be dismissed because they failed to allege factual assertions that would demonstrate the element of scienter required in a securities fraud action. Id.

Plaintiffs' opposed the conclusions reached in the Report and Recommendation, alleging that they have sufficiently pleaded the requisite of scienter and that the verified complaint states a plausible claim as to the allegations under the Securities and Exchange Act. (Docket No. 103).

Defendant Nieves responded to Plaintiffs' opposition addressing the requisite of scienter and the effect of its lacking in a case for alleged violation of the Securities and Exchange Act

(Docket No. 108).  Nieves further stressed that he did not act with scienter, nor violated the antifraud provisions with intent to deceive or defraud Plaintiffs.  Id. at ¶15.

Upon the Court's *de novo* review of the Magistrate Judge's Report and Recommendation, pursuant to the standard discussed in Section I, *infra*, the Court hereby **ADOPTS IN TOTO** the Report and Recommendation as discussed herein.

### I.  MAGISTRATE'S REPORT AND RECOMMENDATION

The Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  *See also* Fed.R.Civ.P. 72(b); D.P.R. Civ. R. 72(a); and Mathews v. Weber, 423 U.S. 261 (1976).  Nonetheless, an adversely affected party may contest the Magistrate Judge's Report and Recommendation by filing its objections to the recommendations made.  Fed.R.Civ.P. 72(b).  In such respect, 28 U.S.C. § 636(b)(1), in pertinent part, provides that

> any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court.  A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

"Absent objection, ... [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation."  Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985), cert. denied, 474 U.S. 1021 (1985).  Additionally, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded upon appeal."  Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992); *see also* Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994) (holding that objections are required when challenging findings actually set out in a magistrate's recommendation, as well as the magistrate's failure to make additional findings); Lewry v. Town of Standish, 984 F.2d 25, 27 (1st Cir. 1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); Borden

v. Sec. of H.H.S., 836 F.2d 4, 6 (1st Cir. 1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised").

The Court, in order to accept an unopposed portion of the Magistrate Judge's Report and Recommendation, needs only satisfy itself that there is no "plain error" on the face of the record.  See Douglass v. United Servs. Auto, Ass'n, 79 F.3d 1415, 1419 (5th Cir. 1996) (*en banc*) (extending the deferential "plain error" standard of review to the un-objected to legal conclusions of a magistrate judge); see also Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. 1982) (*en banc*) (appeal from district court's acceptance of un-objected to findings of magistrate judge reviewed for "plain error"); Nogueras–Cartagena v. United States, 172 F.Supp.2d 296, 305 (D.P.R. 2001) (finding that the "Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous") (adopting the Advisory Committee note regarding FED. R.CIV. P. 72(b)); Garcia v. I.N.S., 733 F.Supp. 1554, 1555 (M.D.Pa. 1990) (finding that "when no objections are filed, the district court need only review the record for plain error").

An adversely affected party may "contest the [m]agistrate [j]udge's report and recommendation by filing objections 'within ten[1] days of being served' with a copy of the order." United States v. Mercado Pagan, 286 F.Supp.2d 231, 233 (D.P.R. 2003) (citing 28 U.S.C. § 636(b)(1)). If objections are timely filed, the district judge shall make a *de novo* determination of those portions of the report or specified findings or recommendation to which an objection is made.  See Bonefont-Igaravidez v. International Shipping Corp., 659 F.3d 120 (1st Cir. 2011); and Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006).

In the instant case, Plaintiffs object the conclusions reached by the Magistrate Judge as to Plaintiffs' failure to sufficiently plead the elements of scienter required in a securities fraud

---

[1] Per Local Rule 72(d), parties may object a magistrate judge's report and recommendation within fourteen (14) days after being served with the order.

action under the Securities and Exchange Act. Hence, the Court will review the Report and Recommendation *de novo* as to the challenged reason.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiffs Nomar Camilo and Roberto Ubiñas are business partners in the Puerto Rico telecommunications industry. They jointly own and operate Kryonyx Corporation, a company that specializes in the installation of computer networks and securities systems, and other communications related services. Compl. 5.

Defendant Link Distributors Corporation ("Link") is a corporation organized under Puerto Rico law; defendant Albert Nieves is Link's President and sole manager. Id. at 2. Nieves was previously employed at ECS Electric, an electronics sales and distribution company, when he met Camilo and Ubiñas in 2006. Camilo and Ubiñas purchased equipment from ECS for their business, and through these transactions, they learned that Nieves was unsatisfied with his job, and wished to set up his own business to sell and distribute telecommunications equipment. Id. at 6. The three individuals began to communicate consistently via telephone starting in 2005 and throughout 2006. They discussed plans to set up Link, whereby Camilo and Ubiñas would provide the start-up capital for the corporation in exchange for 66% of the company's shares. Id. at 8. As the President and business administrator of Link, Nieves would be responsible for its operations and management, and all major business decisions would be approved by a majority of the shareholders. Id. at 9. They further agreed that Nieves would provide to Camilo and Ubiñas regular operations reports, dividend payments, access to Link's clients and suppliers lists, and the codes for the alarm system and operations site. Id. at 10.

In June 2006, the plaintiffs and Nieves opened a bank account to keep track of all expenditures related to setting up Link. The initial deposit of $7,400 was paid for by plaintiffs. Four other bank accounts were opened by the parties between 2006 and 2009. Although plaintiffs had access to these bank accounts, Nieves was responsible for the use and administration of the funds therein. Id. at 12-13.

On September 27, 2006, Nieves incorporated Link at the Puerto Rico Department of State as a domestic for-profit corporation, with a business volume not to exceed three million dollars. Docket No. 1-2. Link never issued any corresponding stock certificates to Camilo and Ubiñas. Compl. 10. Nieves, with assistance and guidance from Ubiñas, began to operate Link, which grew at a healthy pace from 2006 to 2009. Id. at 14-15. Kryonyx also began to purchase supplies from Link.

Starting in 2009, the relationship between plaintiffs and Nieves began to sour. Plaintiffs started to question Nieves's management and administration of Link's finances. They learned that cash deposits from daily sales were not being

---

[2] The Court hereby incorporates the facts as stated in the Report and Recommendation (Docket No. 101) and will only supplement the same with additional information should it be considered necessary.

- 4 -

>made, and there appeared to be inadequate price controls, as Kryonyx was being charged higher prices than its competitors. Id. at 16. Plaintiffs requested Nieves provide them with access to Link's accounting and payroll records so they could assist in correcting perceived deficiencies. Nieves provided some of the information in early 2010 but refused to comply further with their requests.
>
>The relationship continued to deteriorate in 2010. In late April, Nieves was spotted at one of Link's banks, and plaintiffs later determined that Nieves visited the bank to remove their access to Link's bank accounts. Id. at 21. The parties began communicating through counsel in May 2010. In a letter from counsel, Nieves denied plaintiffs' rights to Link's financial information, and stated that he was Link's sole stockholder. Id. at 22. Nieves took the position that plaintiffs never purchased Link stock, that the funds provided to start Link was a loan, and not for the purchase of Link stock. Plaintiffs filed this action against Nieves on November 24, 2010.
>
>In the verified complaint, plaintiffs assert claims for (1) violation of federal securities laws, Section 10(b) and Rule 10b-5 of the SEA; (2) breach of plaintiffs' rights as stockholders to inspect Link's corporate books; (3) breach of fiduciary duty; (4) past and future dividends; (5) a declaratory judgment of Link's business fair value; (6) preliminary and permanent injunctions; (7) unjust enrichment; and alternatively (8) rescission of the stock purchase.

(Docket No. 101, pages 3-5).

After various procedural incidents, the Court issued an *Opinion and Order* denying Plaintiff's motion for injunctive relief (Docket No. 35). In the opinion and order, the Court found that the parties had entered into a verbal subscription agreement for the purchase of Link's stock; that the Corporations Act requires that subscription agreements be executed in writing to uphold their validity and enforceability; and that the record did not include evidence showing that Plaintiffs had purchased Link's stock certificates. For such reasons, the Court held that Plaintiffs had failed to prove that they were Link's shareholders. Thus, the Court denied Plaintiffs' request for injunctive relief and entered an order to show cause as to why the case should not be dismissed for lack of a written subscription agreement required by state law. (Docket No. 35).

On reconsideration moved by Plaintiffs, the Court deemed as plausible Plaintiffs' allegations that the parties entered in to a valid subscription agreement for the purchase of 66% of the shares of Link, as provided in Santiago-Aponte v. Rodríguez Martínez, 181 D.P.R. 204

(2011) (Docket No. 55). Nonetheless, the Court affirmed its position denying the injunctive relief for Plaintiffs' failure to prove that they are likely to succeed on the merits of a case under Section 10(b) of the 1934 Act. The Court's conclusion was based on its finding that Plaintiffs failed to plead with sufficient particularity four of the seven elements necessary in a securities fraud case,[3] as follows: (a) the defendant made a misrepresentation; (b) scienter; (c) reasonable or justifiable reliance; and (d) transaction causation and loss causation.

Subsequently, the Court ordered the parties to show cause as to why the case should be dismissed for Plaintiffs' failure to meet the requirements of a private action for securities fraud under Section 10(b) of the Securities and Exchange Act of 1934 and/or Rule 10b-5 (Docket No. 56). Notwithstanding the above, the case continued to run its course for Defendants did not file a motion to dismiss.

After holding the Initial Scheduling Conference, the Court referred the case to Magistrate Judge McGiverin for him to preside over all case management and pretrial motions (Docket No. 85). Next, Link filed a motion to dismiss or, in the alternative, for judgment on the pleadings and Nieves filed a motion requesting judgment on the pleadings (Docket Nos. 87 and 88, respectively). Magistrate Judge McGiverin recommended the Court grant Link's motion to dismiss (Docket No. 101).

---

[3] To establish a prima facie case of securities fraud based upon a misrepresentation in violation of Section 10(b) of the 1934 Act and/or Rule 10b-5 such as the instant case, the plaintiff must plead and prove that: (a) the defendant made a misrepresentation; (b) the misrepresentation concerned one or more material fact(s); (c) the defendant made the misrepresentation knowingly, or with reckless disregard for the truth thereof, and with the intent to deceive or defraud (scienter); (d) the defendant made the misrepresentation in connection with a purchase or sale of securities; (e) the defendant made the misrepresentation by means of the mails or some other device or instrumentality of interstate commerce, or of any facility of any national securities exchange; (f) the plaintiff relied upon defendant's misrepresentation; and, as a consequence of plaintiff's reliance, purchased (or sold) the security in question; and (g) the defendant's material misrepresentation proximately caused plaintiff to suffer some monetary damage. See Erica P. John Fund, Inc. v. Halliburton Co., 131 S.Ct. 2179, 2184 (2011) (quoting Matrixx Initiatives, Inc. v. Siracusano, 131 S.Ct. 1309, 1317 (2011). In addition, a majority of the federal circuits further require that plaintiff prove that reliance on the defendant's misrepresentation was "justifiable." Thus, to prevail on a claim in a typical private action for securities fraud, the defendant must prove all such elements. See Matrixx Initiatives, Inc. v. Siracusano, 131 S.Ct. at 1317-1318.

### III.     DISCUSSION

Having reviewed the Magistrate Judge's Report and Recommendation *de novo*, as we must, and the record of the instant case the Court concludes that, as to the element of scienter, Plaintiffs failed to proffer or allege with sufficient particularity that Nieves made the alleged misrepresentations knowingly, with reckless disregard for the truth, and with the intent to deceive or defraud Plaintiffs. In fact, the Court had already made a ruling in this particular issue in its *Amended Opinion and Order* regarding Plaintiffs' motion for reconsideration. *See* Docket No. 55. Below is an excerpt of the Court's discussion and analysis on the element of scienter:

> "Scienter" has been defined as "a mental state embracing intent to deceive, manipulate, or defraud." *See* Maldonado v. Domínguez, 137 F.3d 1, 9 (1st Cir. 1998) (citing Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n. 12 (1976). Section 10(b) and Rule 10b-5 require proof that the defendant (1) knew the representation was false or that the omission would tend to make those facts that were disclosed untrue or (2) made the misrepresentation or omission with reckless disregard of its truthfulness or falsity. *See* Ernst, *supra*. However, it is not enough that the allegation for scienter be based solely on financial interest or motive and opportunity to mislead, because such a finding would expose "virtually every company in the United States that experiences a downturn in stock price" to liability under Section 10(b) or Rule 10b-5. *See* Acito v. IMCERA Group, Inc., 47 F.3d 47, 54 (2d. Cir 1995).
>
> In determining whether securities fraud complaints plead scienter, the First Circuit "has been clear and consistent in holding that, under Section 10(b), plaintiffs must plead specific facts giving rise to a 'strong inference' of fraudulent intent." Maldonado v. Domínguez, *supra* (citing Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir.1992) ("Courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was false or misleading."). A district court can dismiss a claim under Section 10(b) of the 1934 Act if it finds that plaintiff's claim failed to plead scienter with sufficient particularity. Maldonado v. Domínguez, *supra*.
>
> In this case, Plaintiffs aver that Defendant Nieves had the "intention of deceiving Plaintiffs in order to obtain startup money" so as to take advantage of "Plaintiffs' technical knowledge and years of experience in the telecommunications market" because Nieves "never [intended] to honor their agreements." (Docket Nos. 1 and 2, pages 10 and 18, respectively). On the contrary, the transcript of the instant messaging communication provided by Plaintiffs (Docket No. 43-1) shows that Nieves may have been confused as to the nature of the moneys contributed by Plaintiffs because Nieves acknowledges Plaintiffs' status as stockholders, but at the same time refers to the moneys as a debt payable from Link to Plaintiffs. (Docket No. 43-1, page 2). Upon such

> circumstance, the Court cannot reasonably conclude Nieves had the intent to deceive Plaintiffs, at least not during the first years of the parties' business relationship.
>
> There are no further allegations or evidence as to Defendant Nieves' intent to deceive, manipulate or defraud Plaintiffs into investing in Link that would satisfy the "sufficient particularity" requirement necessary for the scienter element in a securities fraud case under Section 10(b) of the 1934 Act or Rule 10(b)-5. Consequently, Plaintiffs have failed to proffer or allege with sufficient particularity that Nieves made the alleged misrepresentations knowingly, with reckless disregard for the truth, and with the intent to deceive or defraud Plaintiffs.

(Docket No. 55, pages 18-20).

The Magistrate Judge reached the same conclusion, and very eloquently reasoned that "failure to perform on a promise alone cannot serve as a basis for finding fraudulent intent." (Docket No. 101, pages 7-8).

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby **ADOPTS IN TOTO** the Magistrate Judge's Report and Recommendation (Docket No. 101).  Thus, the Court hereby **GRANTS** Defendants' motion to dismiss Plaintiffs' causes of action, **DISMISSING WITH PREJUDICE** Plaintiff's federal causes of action and **DISMISSING WITHOUT PREJUDICE** Plaintiff's causes of action under Puerto Rico law.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 16th day of December, 2013.

> */s/ Daniel R. Dominguez*
> Senior U.S. District Judge